**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **CHRIS LAWRENCE, CITIZENS TO ELECT CHRIS LAWRENCE, MARILYNN PIERCE, JOSEPH TELLER** and **LYNN ROWLEY,** | ) ) ) ) |
| Plaintiffs, | ) ) ) No. 07 C 566 ) |
| v. | ) ) ) |
| **BOARD OF ELECTION COMMISSIONERS OF THE CITY OF CHICAGO and its members LANGDON D. NEAL, RICHARD A. COWEN,** and **LISA MADIGAN, Attorney General of the State of Illinois,** | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

## MEMORANDUM OPINION AND ORDER

Before me is a motion pursuant to Federal Rule of Civil Procedure 12(b)(1) brought by certain defendants-the Board of Election Commissioners of the City of Chicago (the "Board") and its members Langdon D. Neal ("Neal") and Richard A. Cowen ("Cowen")-to dismiss the first amended complaint (the "complaint") filed by plaintiffs Chris Lawrence ("Lawrence"), Citizens to Elect Chris Lawrence, Marilynn Pierce, Joseph Teller and Lynn Rowley. Also before me is plaintiffs' motion under Federal Rule of Civil Procedure 56 for summary judgment. Plaintiffs' complaint challenges Lawrence's disqualification as a candidate for the alderman of the City of Chicago's Forty-Eighth Ward (the "48th Ward") in the upcoming municipal election, and contends that his disqualification by the Board was unconstitutional and that the

portion of the statutory provision under which he was disqualified, 10 ILL. COMP. STAT. 5/10-5 (2006), is unconstitutional on its face. Plaintiffs seek a declaration that the requirement that a candidate file a certain receipt before the last day for filing nominating papers is unconstitutional, a declaration that the disqualification of a candidate for the inadvertent filing of that receipt after the last day for filing nominating papers is unconstitutional, an order for a special election for alderman of the 48th Ward in which Lawrence's name is placed on the official ballot, and attorneys' fees. For the following reasons, I deny defendants' motion to dismiss, deny plaintiffs' motion for summary judgment, and grant summary judgment in favor of defendants.

## I. Facts Relevant to Both Motions

The undisputed facts relevant to both motions[1] are as follows:[2] Lawrence is a resident of the 48th Ward who decided to run for

---

[1]As discussed in more detail below, for purposes of defendants' motion to dismiss I must take all well-pleaded facts in the light most favorable to plaintiffs, also considering any additional affidavits or evidence provided by defendants, but for plaintiffs' motion for summary judgment I must consider the facts in the light most favorable to the defendants. Either way, the facts as provided herein are not in dispute by either party for purposes of either motion.

[2]The Board, Neal and Cowen have also filed a motion to strike certain portions of the plaintiffs' Local Rule 56.1 statement of facts, contending that certain of the facts contained in that statement are immaterial and irrelevant to the outcome of the legal issues before the court. Given that I deny plaintiffs' motion for summary judgment I deny this motion as moot, but I have not considered any facts which are irrelevant to the outcome.

alderman of that ward. Plaintiffs Marilynn Pierce, Joseph Teller, and Lynn Rowley are registered voters in the 48th Ward who signed Lawrence's nominating petition and participated in plaintiff Citizens to Elect Chris Lawrence by collecting signatures on Lawrence's behalf. Defendants Neal and Cowen are commissioners of the Board.

On December 11, 2006, Lawrence filed with the Board his nominating papers for the office of alderman of the 48th Ward. In support of his nomination he filed a petition sheet containing the signatures of approximately 500 voters who supported his candidacy. On December 18, 2006, Lawrence filed a "Statement of Economic Interests" with the Clerk of Cook County (the "county clerk") as required by 10 ILL. COMP. STAT. 5/10-5. The county clerk issued him a receipt. Although Lawrence was aware that Illinois election laws required him to file the receipt with the Board, he inadvertently failed to do so. On December 21, 2006, two individuals that worked for the reelection campaign of the incumbent alderwoman of the 48th Ward filed objections with the Board to Lawrence's nominating papers, contending that Lawrence had failed to file with the Board the receipt for his "Statement of Economic Interests". After learning of the objection Lawrence tried to file his receipt with the Board, but the Board refused to accept it. A hearing examiner held a hearing on the objections to Lawrence's nominating papers, and recommended that the Board sustain the objections.

Subsequently, on January 16, 2007, the Board found that because Lawrence had not submitted his receipt for the filing of his "Statement of Economic Interests" until after December 18, 2006, his nominating papers were invalid and his name should be barred from the ballot for the municipal election.

On January 26, 2007, Lawrence filed an action for judicial review of the Board's decision in the Circuit Court of Cook County, seeking a reversal of the Board's decision, to have his name placed on the ballot, and an order mandating a special election. On January 31, 2007, the circuit court heard argument, denied Lawrence's petition for review, and affirmed the decision of the Board. *See Lawrence v. Bd. of Election Comm'rs*, 2007 COLE 000008, slip op. at *1 (Cir. Ct. Cook Co. Jan. 31, 2007). On January 31, 2007, Lawrence filed a notice of appeal of the circuit court's decision in the Illinois appellate court. On February 20, 2007, the appellate court affirmed the circuit court's decision. *See Lawrence v. Bd. of Election Comm'rs*, 07-0286, Order at *7 (Feb. 20, 2007). In both of these actions Lawrence raised the arguments that the Board's decision was in violation of the Illinois Supreme Court's previous interpretations of the Illinois Election Code, and that the Board's decision violated the rule of statutory construction that statutes not be interpreted in a manner that would lead to absurd or unjust results. Lawrence did not raise any

constitutional arguments before either court, nor did their decisions hinge on any constitutional grounds.

## II.  Motion to Dismiss

Defendants' motion to dismiss contends that this court lacks subject matter jurisdiction to hear plaintiffs' claims since Lawrence previously initiated litigation in state court challenging the Board's decision.  I deny their motion.

### A.  Standard for Motion to Dismiss

Although courts have differed about the true standard for motions to dismiss for lack of subject matter jurisdiction, the Seventh Circuit clarified the standard in *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942 (7th Cir. 2003), holding:

> If subject matter jurisdiction is not evident on the face of the complaint, the motion to dismiss pursuant to Rule 12(b)(1) would be analyzed as any other motion to dismiss, by assuming for purposes of the motion that the allegations in the complaint are true. However . . . if the complaint is formally sufficient but the contention is that there is in fact no subject matter jurisdiction, the movant may use affidavits and other material to support the motion. The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction.

*Id.* at 946 (internal citations omitted).  In this case, plaintiffs' complaint properly asserts federal question jurisdiction under 28 U.S.C. §§ 1331, 1343(3) and 2201, but defendants contend this court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine established in *Rooker v Fid. Trust Co.*, 263 U.S. 413 (1923) and *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

Therefore, I may consider the materials submitted by defendants in ruling on their motion.

## B. Merits of Defendants' Motion

I agree with plaintiffs that defendants' analysis of the *Rooker-Feldman* doctrine relies on outdated precedent and is simply incorrect. The *Rooker-Feldman* doctrine does not apply to plaintiffs' present claims. These claims do not challenge a state court decision, and this case was filed before the state court entered judgment on Lawrence's claims. In short, there is no basis for the application of the *Rooker-Feldman* doctrine here.

As recently explained by the Supreme Court in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2006), the *Rooker-Feldman* doctrine prohibits district courts from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284. As the Supreme Court clarified in *Exxon Mobil*, the doctrine is not triggered "simply by the entry of judgment in state court" where there is parallel state and federal litigation, nor does it "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated

in state court." *Id.* at 292-93.[3]  Instead, it merely enforces the

jurisdiction the Supreme Court has to review state court judgments

under 28 U.S.C. § 1257.  *Id.* at 291.  In *Exxon Mobil*, the Supreme

Court reversed the appellate court's affirmation of a dismissal of

a federal case under the *Rooker-Feldman* doctrine.  *Id.* at 294.  The

appellate court had concluded that, where a party was sued in state

court and subsequently brought counterclaims in federal court that

essentially duplicated some of the issues in the state court case,

and where the state court reached a judgment before the federal

court, the federal court lacked jurisdiction under *Rooker-Feldman*.

*Id.* at 289-90 (citing 364 F.3d 102, 103-05 (3d Cir. 2004)).  The

Supreme Court, in reversing this decision, explained that *Rooker-*

*Feldman* did not apply because "ExxonMobil plainly has not repaired

to federal court to undo the Delaware judgment in its favor.

Rather, it appears ExxonMobil filed suit in [federal court] to

protect itself in the event it lost in state court on grounds that

might not preclude relief in the federal venue."  344 U.S. at 293-

94.  Under the circumstances in the case, the Supreme Court

concluded that *Rooker-Feldman* did not prevent Exxon Mobil from

taking this course of action.  *Id.* at 294.

---

[3]In *Exxon Mobil* the Supreme Court clarified that comity and
abstention doctrines may "permit or require the federal court to
stay or dismiss the federal action in favor of the state-court
litigation." *Id.* at 292 (internal citations omitted).  That is not
at issue here because the defendants have raised no comity or
abstention arguments, and I see no reason for abstaining *sua
sponte*.  *See Bellotti v. Baird*, 428 U.S. 132, 143 n.10 (1976).

7

As plaintiffs note, the Seventh Circuit has recognized the holding in *Exxon Mobil* and itself held in *Truserv Corp. v. Flegles, Inc.*, 419 F.3d 584 (7th Cir. 2005) that the *Rooker-Feldman* doctrine does not prohibit a party from filing a claim in federal court before a state court renders a judgment on a pending suit involving the same issues as long as the federal claim "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party." *Id.* at 590-91 (quoting *GASH Assocs. v. Vill. of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)).

Analyzing the *Rooker-Feldman* doctrine as explained in *Exxon Mobil* makes clear that it does not apply to the present case. First, plaintiffs filed their claim in federal court on January 30, 2007, one day before the Circuit Court of Cook County issued its opinion. Second, plaintiffs' suit does not allege an injury caused by a state court decision, but rather an injury caused by the alleged unconstitutionality of the Illinois statute at issue, and an injury caused by the Board's application of the statute to remove Lawrence's name from the ballot.

Plaintiffs did file their complaint after the Board determined that Lawrence's name was barred from the ballot, and the complaint in part challenges the decision of the Board. The *Rooker-Feldman* doctrine does not apply to judicial review of executive actions. *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S.

635, 644 n.3 (2002) (internal citations omitted).  However, as
concluded by other circuit courts analyzing the decision in
*Feldman*, decisions by quasi-judicial administrative bodies acting
in a judicial capacity may also come under the *Rooker-Feldman* rule.
*See Mitchell v. Fishbein*, 377 F.3d 157, 166-67 (2d Cir. 2004)
(collecting cases).  Neither party has raised this issue, and I can
find no law in the Seventh Circuit holding that the Board or any
other Illinois election body acts in a judicial capacity when it
rules on objections to the placement of a candidate's name on the
ballot.[4]  At least one other court within the Northern District of
Illinois has considered the substantive merits of a suit brought
under a similar procedural posture without applying *Rooker-Feldman*.
*See Hartke v. Chicago Bd. of Election Comm'rs*, 651 F. Supp. 86
(N.D. Ill. 1986).  For these reasons, I will not apply the
reasoning of the "quasi-judicial decision" line of cases here.

Defendants' entire argument for the application of the *Rooker-Feldman* doctrine relies on a district court opinion issued in *Young
v. Illinois State Bd. of Elections*, 116 F. Supp 2d. 977 (N.D. Ill.
2000), *aff'd* 234 F.3d 1275 (7th Cir. 2000) (unpublished decision).
In that case, after the Illinois Board of Elections denied an
objection to placing James Young's name on the ballot, the
proponent of the objection sought and obtained an order from the

---

[4]The powers and organization of the Board are generally
described in 10 ILL. COMP. STAT. 5/6.

Circuit Court of Sangamon County overturning the decision of the Board of Elections and removing Young's name from the ballot. *Id.* at 979. Young then filed a suit in federal district court seeking a preliminary injunction declaring unconstitutional the provision of the Illinois Code upon which the circuit court relied in removing him from the ballot, as well as an additional provision, and seeking an order that his name be placed on the ballot. *Id.* at 980. Applying the *Rooker-Feldman* doctrine, the district court concluded that it lacked subject matter jurisdiction to hear Young's claims because it would require the district court to overturn the decision of the state court removing his name from the ballot. *Id.* at 983.

The decision in *Young* is clearly not applicable here. Young's federal suit directly challenged the decision by the state circuit court removing his name from the ballot; his federal claim was predicated upon an injury by the state court, unlike plaintiffs' claims. Young brought his federal claims after the state court had issued a judgment, unlike plaintiffs here. His claim was the paradigmatic claim for the application of *Rooker-Feldman* as described in the *Exxon Mobil* decision, unlike the present claims.

For the above reasons, I conclude that the *Rooker-Feldman* doctrine does not bar subject matter jurisdiction in this case. I therefore deny defendants' motion to dismiss.

III. Plaintiffs' Motion for Summary Judgment

Plaintiffs have also moved for summary judgment. In their motion plaintiffs argue that the statute at issue here, 10 ILL. COMP. STAT. 5/10-5, is unconstitutional both on its face and as applied to Lawrence. They argue that the statute violates each plaintiff's right to freedom of association in violation of the First and Fourteenth Amendments and that Lawrence's disqualification violated Lawrence's right to equal protection under the Fourteenth Amendment and denied each plaintiff his right to freedom of association in violation of the First and Fourteenth Amendments. In response, defendants contend that the doctrine of *res judicata* bars plaintiffs' claims, and that the statute is not unconstitutional.[5] Madigan also argues that the suit against her is barred by the Eleventh Amendment. Because I conclude that the doctrine of *res judicata* bars plaintiffs' claims, I need not reach their constitutional arguments. However, even assuming *res judicata* did not apply, plaintiffs' claims still fail.

A. Standard for Summary Judgment

Summary judgment is appropriate where the record and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 694 (7th Cir.

---

[5]The Board, Neal and Cowen filed one response to plaintiffs' motion, and Attorney General Lisa Madigan ("Madigan") filed another, but both raise substantially similar arguments.

2006) (citing FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If the moving party meets this burden, the non-moving party must then go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. *Id.* at 694 (citing FED. R. CIV. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990)). The existence of merely a scintilla of evidence in support of the non-moving party's position is insufficient; there must be evidence on which the jury could reasonably find for the nonmoving party. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Anderson*, 477 U.S. at 255.

B.  Doctrine of *Res Judicata*

The first of defendants' arguments that I must consider is that the doctrine of *res judicata* bars plaintiffs from raising their claims.[6] They contend that plaintiffs' failure to raise their claims in the previous state court proceedings bars them from raising them now. I find that the elements of *res judicata* are met here to bar plaintiffs' claims.

---

[6]Plaintiffs contend that defendants have confused the elements of collateral estoppel and *res judicata*, and that they have attempted to raise claims about both doctrines. I read defendants' arguments to raise only *res judicata*, and I do not address the principles of collateral estoppel in this opinion.

As the Supreme Court noted in the *Exxon Mobil* decision, even if the existence of a prior state court decision does not bar a district court from exercising jurisdiction under *Rooker-Feldman*, "a federal court may be bound to recognize the claim- and issue-preclusive effects of a state-court judgment." 544 U.S. at 293. Pursuant to 28 U.S.C. § 1738, federal courts must give "full faith and credit" to state court decisions. This statute requires me to give Illinois state court judgments the *res judicata* effect that an Illinois court would give them. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 560 (7th Cir. 1999). Under Illinois law, a final judgment on the merits rendered by a court of competent jurisdiction acts as a bar to a subsequent suit between the parties involving the same cause of action. *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 302, 234 Ill. Dec. 783, 789, 703 N.E.2d 883, 889 (1998) (internal citations omitted). "The bar extends to what was actually decided in the first action, as well as those matters that could have been decided in that suit." *Id.* (citing *La Salle Nat'l Bank v. County Bd. of Sch. Trustees*, 61 Ill. 2d 524, 529, 337 N.E.2d 19, 22 (1975)). For the doctrine of *res judicata* to apply, Illinois requires that the following three criteria be met: (1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies. *River Park, Inc.*, 184 Ill. 2d at 302,

234 Ill. Dec. at 789, 703 N.E.2d at 889 (citing *Downing v. Chicago Transit Auth.*, 162 Ill. 2d 70, 73-74, 204 Ill. Dec. 755, 757, 642 N.E.2d 456, 458 (1994)). Defendants bear the burden of establishing these elements. *See Bd. of Educ. of Sunset Ridge Sch. Dist. No. 29 v. Vill. of Northbrook*, 295 Ill. App. 3d 909, 915, 230 Ill. Dec. 112, 116-17, 692 N.E.2d 1278, 1282-83 (Ill. App. Ct. 1998) (internal citations omitted). I consider each of these criteria below.

1. Final Judgment on the Merits

Lawrence's action for review of the Board's original decision removing his name from the ballot has proceeded through two levels of Illinois state court review. On January 31, 2007, the circuit court affirmed the decision of the Board. *See Lawrence v. Bd. of Election Comm'rs*, 2007 COLE 000008, slip op. at *1. On February 20, 2007, the appellate court affirmed the circuit court's decision. *See Lawrence v. Bd. of Election Comm'rs*, 07-0286, Order at *7. For purposes of *res judicata*, both of these decisions are final judgments on the merits. This appears to be true even if Lawrence decides to petition the Illinois Supreme Court for leave to appeal these judgments. *Wiseman v. Law Research Serv., Inc.*, 133 Ill. App. 2d 790, 792-93, 270 N.E.2d 77, 79-80 (Ill. App. Ct. 1971) ("The rule has been settled that where a judgment in one case has successfully been made the basis for the judgment in a second case, the second judgment will stand as Res judicata, although the

14

first judgment be subsequently reversed.") (quoting *State Life Ins. Co. v. Bd. of Educ.*, 401 Ill. 252, 257, 81 N.E.2d 877, 880 (1948)); *see also Illinois Founders Ins. Co. v. Guidish*, 248 Ill. App. 3d 116, 120, 187 Ill. Dec. 845, 849, 618 N.E.2d 436, 440 (Ill. App. Ct. 1993) ("[A] final judgment can serve as the basis to apply the doctrines of res judicata and collateral estoppel even though the judgment is being appealed.").

## 2. Identity of Cause of Action

In Lawrence's state court challenges to the Board's decision he argued that the Board's decision violated the meaning of the statute as interpreted by the Illinois Supreme Court and that the Board's decision violated the rule of statutory construction that statutes not be interpreted in a manner that would lead to absurd or unjust results. He did not raise any of the constitutional arguments now before this court, nor did the state courts apply any constitutional principles in reaching their decisions. However, *res judicata* still applies as a bar to later raising arguments that "could have been decided" in the first suit as well as matters that were "actually decided" in the first suit. *River Park, Inc.*, 184 Ill. 2d at 302, 234 Ill. Dec. at 789, 703 N.E.2d at 889 (citing *La Salle Nat'l Bank*, 61 Ill. 2d at 529, 337 N.E.2d at 22); *see also 4901 Corp. v. Town of Cicero*, 220 F.3d 522, 530 (7th Cir. 2000) (applying Illinois law of *res judicata*).

The parties dispute whether the constitutional issues that the plaintiffs now raise could have been raised in state court. Setting aside the fact that some of the constitutional claims here are raised by individuals who were not parties to Lawrence's appeal of the Board's decision (that issue is discussed in more detail in the subsequent section analyzing privity), Lawrence contends that at the state court level he could only appeal the actual Board's decision and could not raise additional constitutional arguments.

Plaintiffs argue, and there appears to be no dispute from the defendants, that the Board itself had no authority to review constitutional challenges to Illinois statutes; its review is limited to "the sole issue of whether a challenged nominating petition complies with the provisions of the Election Code pertaining thereto." *Wiseman v. Edward*, 5 Ill. App. 3d 249, 257, 283 N.E.2d 282, 288 (Ill. App. Ct. 1972); *see also Nader v. Ill. State Bd. of Elections*, 354 Ill. App. 3d 335, 340, 289 Ill. Dec. 348, 353, 819 N.E.2d 1148, 1153 (Ill. App. Ct. 2004). In turn, review of the Board's decision by the circuit court or the appellate court is limited to the record created before the Board. *Wiseman*, 5 Ill. App. 3d at 253-54, 283 N.E.2d at 286-87. However, in *Wiseman* the court specifically noted that the review by the circuit court or appellate court was limited to, in part, "the constitutionality of the statute." *Id.* at 255, 283 N.E.2d at 287 (applying standard for review of administrative issuance of

subpoenas set forth in *Illinois Crime Investigating Comm'n v. Buccieri*, 36 Ill. 2d 556, 562, 224 N.E.2d 236, 240 (1967)). In *Phelan v. County Officers Electoral Bd.*, 240 Ill. App. 3d 368, 181 Ill. Dec. 142, 608 N.E.2d 215 (Ill. App. Ct. 1992), the Illinois appellate court specifically affirmed that the circuit court had the jurisdiction to rule on the constitutionality of the statute at issue. *Id.* at 373, 181 Ill. Dec. at 144-45, 608 N.E.2d at 217-18 (internal citations omitted). Defendants also point to other Illinois law holding that litigants must raise constitutional challenges at the earliest opportunity. *See, e.g.*, *Cont'l Paper Grading Co. v. Howard T. Fisher & Assocs., Inc.*, 1 Ill. 2d 37, 44, 115 N.E.2d 291, 295 (1953). Further, in *Howard v. Lawton*, 22 Ill. 2d 331, 175 N.E.2d 556 (1961), the Illinois Supreme Court concluded that state constitutional issues can be raised "in a complaint for administrative review" because "[t]o hold otherwise would result in piecemeal litigation by first requiring review of an administrative body's decision and then entertaining another action to test constitutionality brought on by such decision." *Id.* at 333, 175 N.E.2d at 557.[7]

---

[7]Plaintiffs also contend that two recent decisions by the Illinois Supreme Court support their argument that they may not raise constitutional issues, but this is incorrect. *See Delgado v. Bd. of Election Comm'rs*, No. 104112 (Ill. Feb. 23, 2007), *Bryant v. Bd. of Election Comm'rs*, No. 104105 (Ill. Feb. 23, 2007). Those cases merely stand for the proposition that, where a circuit court can decide an issue without reaching the constitutionality of a statute, it should do so. *See, e.g.*, *Delgado*, No. 104112, slip op. at 6-7; *Bryant*, No. 104105, slip op. at 5-6. They do not undercut

Plaintiffs' argument is that because the circuit court and appellate court are limited to the record as developed before the Board, challengers to the Board's decision will not be able to present the factual record necessary to fully develop their constitutional arguments at the state court level. For this reason, they contend that the principle of *res judicata* cannot apply since their challenges truly could not have been decided at the state court level. This appears to be a novel argument, and I can find no support for it. Plaintiffs point out that they are required to present evidence of the burden of the requirements of 10 ILL. COMP. STAT. 5/10-5 to demonstrate that the excessive burden it causes them outweighs the state's interests that are served by its requirements. *See, e.g.*, *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). In support of the purported burden the statute causes them, plaintiffs have submitted affidavits in which they assert that having only an unopposed incumbent candidate on the ballot for alderman of the 48th Ward has had a significant chilling effect on the discussion of political and community issues within the ward. These affidavits, however, do not really provide relevant information that is not apparent from the fact, already present in the record before the Board, that numerous people supported

_____

the authority discussed in this opinion that circuit courts have the jurisdiction to rule on constitutional claims; indeed these two opinions discuss the procedure for circuit courts to do so. *See Delgado*, No. 104112, slip op. at 6; *Bryant*, No. 104105, slip op. at 5.

Lawrence's candidacy (as evidenced by the number of petition signatures) and that his supporters will not be able to vote for him since his name will not appear on the ballot.[8]  The relevant "burden" under the statute is the difficulty it imposes on potential candidates in complying with the receipt-filing requirement,[9] and the accompanying level of burden this places on voters in associating with a candidate or party, or being forced against their will to associate with a candidate or party they do not support.  These burdens are evident from the text of the statute.  The affidavits that defendants have presented are red herrings – they do not identify any true associational rights that plaintiffs have lost that are not evident from the circumstances of the case already, and plaintiffs have not provided this court with

---

[8]I do not intend to demean the passion that Lawrence and the other plaintiffs demonstrate for the purported issues in the 48th Ward, or to give an opinion about the importance of the issues about which they express concern.  But the fact that the incumbent alderman is now running unopposed is irrelevant to the issue of "burden" – the statute did not cause this situation.  As discussed more fully below, it would be a strange standard to judge the burden caused by a regulation limiting ballot access by whether other available candidates are adequately challenging an incumbent, or by the seriousness of issues facing the voters in a given election.  I can find no cases applying such a standard to judge the burden of an election regulation, and defendants have cited none.

[9]Here, Lawrence does not challenge and has not argued that he wanted to challenge the difficulty of complying with the receipt-filing requirement.  He admits that he knew of the requirement but simply forgot to comply because he was rushing to complete other filing requirements.  He has pointed to no evidence that he would have presented to the state courts absent their limitation to the record before the Board.

any other evidence that they wanted or could have presented to the state court that the limitation to the record before the Board prevented. Therefore, I conclude that the constitutional claims plaintiffs now raise could have been decided by the state court.[10]

### 3. Identity of Parties or Privies

Finally, defendants argue that *res judicata* should apply even though all the plaintiffs but Lawrence were not parties to the state court suit because the other plaintiffs are all in privity with Lawrence. Although these parties are raising their own constitutional claims and are in a slightly different position from Lawrence vìs-a-vìs the Board's decision to remove him from the ballot, defendants contend that Lawrence represented the other plaintiffs' interests at the state court level. Under Illinois law, privity exists between "parties who adequately represent the same legal interests." *Burris v. Progressive Land Developers, Inc.*, 151 Ill. 2d 285, 296, 176 Ill. Dec. 874, 879, 602 N.E.2d 820, 825 (1992) (internal citations omitted). "It is the identity of interest that controls in determining privity, not the nominal identity of the parties." *Id.* at 296, 176 Ill. Dec. at 880, 602

---

[10]Lawrence's counsel also contends that he had a very short amount of time to present his case to the Circuit Court of Cook County, and that he was given even less time to submit a brief in support of his challenge to the Board's decision. Without opining about the validity of these concerns, to the extent that Lawrence has a procedural due process challenge to the procedures of the Illinois state court, this is not the appropriate forum to raise such a challenge.

N.E.2d at 826 (internal citations omitted). A party may be in privity with another party that adequately represents the same legal interests even though the two parties' claims are not the same. *Burris*, 151 Ill. 2d at 295, 176 Ill. Dec. at 879, 602 N.E.2d at 825 (internal citations omitted) ("If the same facts are essential to the maintenance of both proceedings or the same evidence is needed to sustain both, then there is identity between the allegedly different causes of action asserted and *res judicata* bars the latter action.").

Here, Lawrence's interests were slightly different than those of the other plaintiffs, since his challenge was that the Board's decision to remove him from the ballot affected his own ability to run for public office, and violated his right to equal protection as well as his right to freedom of association. The other plaintiffs were asserting only their right to freedom of association under the First and Fourteenth Amendments. Still, Lawrence adequately protected their interests; he had the same arguments to raise as the other plaintiffs, as evidenced by the fact that they have filed a claim together here and assert the same arguments in favor of a constitutional violation. If anything, he had a stronger incentive to raise these issues than the other plaintiffs did, since the Board's decision affected him more directly than the other plaintiffs. Plaintiffs contend that because only Lawrence had standing to appear in state court the

other plaintiffs cannot be in privity with him for this purpose, but he has cited no authority supporting this limitation of the doctrine, and I can find none that would add this requirement.

Several other courts have found privity in similar circumstances. In *Hartke*, the district court found that signatories to a referendum petition that was rejected from the ballot were in privity with other signatories to that petition who had previously challenged the rejection in state court. The court concluded that even if prior litigants act separately from subsequent litigants, the subsequent litigants can be in privity if their interests were adequately represented in state court. 651 F. Supp. at 86. The Second Circuit has also addressed this issue in the context of voter challenges to a state court's decision to order an election board not to recount absentee ballots. *See Hoblock v. Albany Co. Bd. of Elections*, 422 F.3d 77 (2d Cir. 2005). In *Hoblock*, the court addressed this issue in the context of whether the *Rooker-Feldman* doctrine barred a federal suit brought by absentee voters who wanted their votes recounted when certain candidates seeking a recount had already unsuccessfully sought a recount in state court. *Id.* at 89-91. The court in *Hoblock* concluded that there could be privity between the plaintiff voters and the candidates involved in the state suit if "the candidates in fact are controlling the voters' federal suit, not to advance the interests of all voters who submitted challenged absentee ballots,

but rather to further the interests of the candidates and a subset of voters whose interests *do* coincide exactly with those of the candidates." *Id.* at 91. In *Cruz v. Bd. of Elections*, 396 F. Supp 2d. 354 (S.D.N.Y. 2005), the district court applied *Hoblock* to conclude that the claims of registered voters seeking to have a candidate placed on the ballot were barred by *Rooker-Feldman* because the candidate had already litigated that issue in state court and lost. *Id.* at 355 n.1. The court concluded those voters were in privity with the candidate because they were "in reality the candidates' pawns." *Id.* (citing *Hoblock*, 422 F.3d at 91).

Although the *Hoblock* and *Cruz* cases were decided in a different circuit under the federal standard for privity, the same reasoning applies to the Illinois law of *res judicata*. The plaintiffs in this action are voters who supported Lawrence's candidacy and sought signatures for him, and who seek to further Lawrence's interests. They are represented by the same counsel.[11] Therefore, even if their counsel failed to raise arguments which might have been raised in the state court decision, they are still held to the decisions of that counsel in what claims he chose to raise in state court.

---

[11]Lawrence's attorney originally filed the complaint in this case on behalf of all of the plaintiffs. At oral argument an additional attorney appeared, purporting to speak for the voters, but that attorney has not filed an appearance in this case, and Lawrence's attorney has never dissociated himself from asserting the claims of the other plaintiffs as well.

For these reasons, I agree with defendants that *res judicata* bars plaintiffs' claims.

## C.  Merits of Constitutional Claims

Although I have concluded that *res judicata* is applicable to plaintiff's claims, even if it were not, plaintiffs would not prevail.  Plaintiffs seek declarations that the requirement that a candidate file a certain receipt before the last day for filing nominating papers is unconstitutional and that the disqualification of a candidate for the inadvertent filing of that receipt after the last day for filing nominating papers is unconstitutional.  They argue that this is so because it violates their First and Fourteenth Amendment rights to freedom of association, and Lawrence's right to equal protection.  I address those claims below.

### 1. Freedom of Association

Plaintiffs contend that the statute, both on its face and as applied to Lawrence violates their First and Fourteenth Amendment rights to freedom of association.  I disagree.

The statute at issue provides:

> Nomination papers filed under this Section are not valid if the candidate named therein fails to file a statement of economic interests as required by the Illinois Governmental Ethics Act in relation to his candidacy with the appropriate officer by the end of the period for the filing of nomination papers unless he has filed a statement of economic interests in relation to the same governmental unit with that officer during the same calendar year as

24

> the year in which such nomination papers were
> filed. If the nomination papers of any
> candidate and the statement of economic
> interest of that candidate are not required to
> be filed with the same officer, the candidate
> must file with the officer with whom the
> nomination papers are filed a receipt from the
> officer with whom the statement of economic
> interests is filed showing the date on which
> such statement was filed. Such receipt shall
> be so filed not later than the last day on
> which nomination papers may be filed.

10 ILL. COMP. STAT. 5/10-5. Under Illinois law, a candidate's
nominating papers are deemed valid unless a timely objection is
made. 10 ILL. COMP. STAT. 5/10-8. Any legal voter in the
subdivision for which the candidate is running for office may make
an objection within five business days of the end of the period for
filing nominating papers. *Id.* The Board then holds a hearing to
determine whether to sustain the objection. 10 ILL. COMP. STAT.
5/10-8. Either the candidate or the objector has the ability to
challenge the Board's decision on the objection to the circuit
court. 10 ILL. COMP. STAT. 5/10-10.1. The parties agree that the
wording of this statute requires a candidate for alderman in the
City of Chicago to file a "Statement of Economic Interests" with
the Clerk of Cook County, and then to file the receipt for that
filing issued by the clerk with the Chicago Board of Elections.

   To assess the constitutionality of this statute I must first
determine the appropriate standard by which to judge it. The
Supreme Court has instructed that a court considering a challenge
to state election law must weigh

> "the character and magnitude of the asserted
> injury to the rights protected by the First
> and Fourteenth Amendments that the plaintiff
> seeks to vindicate" against "the precise
> interests put forward by the State as
> justifications for the burden imposed by its
> rule," taking into consideration "the extent
> to which those interests make it necessary to
> burden the plaintiff's rights."

*Burdick*, 504 U.S. at 434 (citing *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); *Tashijian v. Republican Party of Connecticut*, 479 U.S. 208, 213-14 (1986)). If a regulation places "severe" restrictions on First Amendment rights, it must be "narrowly drawn to advance a state interest of compelling importance." *Burdick*, 504 U.S. at 434 (citing *Norman v. Reed*, 502 U.S. 279, 289 (1992)). If it imposes more limited restrictions, it is subject to less scrutiny, and "the State's important regulatory interests are generally sufficient to justify" the restrictions. *Id.* (internal citations omitted).

I find that the statute at issue does not severely burden plaintiffs' constitutional rights. Plaintiffs contend that the statute affects their rights under the First and Fourteenth Amendment. First, the most obvious burden plaintiffs might assert is the burden to Lawrence in complying with the requirement. He acknowledges, however, that the hurdle this requirement places on candidates is not great; it merely requires the candidates to file an extra piece of paper with the Chicago Board of Elections. It does not require candidates to obtain an incredibly high number of signatures, or to file particularly detailed or onerous

information, or to jump over any other burdensome hurdle in order to appear on the ballot.

Plaintiffs also contend the statute is burdensome through affidavits asserting that the lack of political competition for the upcoming election has had a chilling effect on the discussion of political and community issues within the 48th ward, and therefore has been burdensome to the plaintiffs as residents of the ward. This, however, is not really a cognizable burden that is "caused" by the Illinois statute. The exclusion of a candidate from the ballot does burden voters' freedom of association "because an election campaign is an effective platform for the expression of views on the issues of the day, and a candidate serves as a rallying point for like-minded citizens." *Lee v. Keith*, 463 F.3d 763, 768 (7th Cir. 2006) (quoting *Anderson*, 460 U.S. at 787-88). However, I can find no case law, nor have plaintiffs provided any, supporting the proposition that this burden is always a "severe" burden or that the severity of the burden should be judged by the availability of other qualified candidates or the importance of the issues in a particular election. In *Burdick*, the Supreme Court rejected the proposition that "voters are entitled to cast their ballots for unqualified candidates" or that "an election system that imposes any restraint on voter choice is unconstitutional." 504 U.S. at 440 n.10; *see also Bullock v. Carter*, 405 U.S. 134, 143 (1972) (holding that the mere fact that an election provision

"creates barriers . . . tending to limit the field of candidates from which voters might choose . . . does not itself compel close scrutiny"). Here, the statute at issue really restrains voter choice only to the extent that voters wish to vote for a candidate who is unable to file the necessary receipt, an action which all candidates are equally capable of doing. Although this is a burden, it is not a severe one.

Because the burden the statute imposes is not severe, but is reasonable and nondiscriminatory (since it applies equally to all candidates), I must consider whether defendants have shown that their important regulatory interests justify the restriction. *Burdick*, 504 U.S. at 434 (internal citations omitted). I find that they have. The statute requires the filing of the receipt where the body with whom a candidate files their "Statement of Economic Interests" is different than the body with whom the candidate must file their nominating papers. This is true for Chicago municipal elections because, although pursuant to the Illinois Election Code the "Statement of Economic Interests" must be filed with county authorities, a municipal candidate's nominating papers must be filed with the Chicago Board of Elections. The defendants contend that the filing of the receipt is necessary so that the Board will know what candidates have filed their required "Statement of Economic Interests" and so that potential objectors need only review paperwork filed with the Board to know if potential

candidates have filed the necessary paperwork.  This is in keeping with the defendants' regulatory interest in having an efficient and orderly process for objectors to challenge petitions, and in having all information concerning nominating papers readily available to objectors and the Board.  Plaintiffs contend that because the receipt filing requirement really only makes the process more convenient for objectors and the Board, since a candidate could always later present evidence that she had actually filed her "Statement of Economic Interests," convenience alone does not justify the requirement.  But the cases that plaintiffs cite are equal protection cases in which the Supreme Court held that "administrative convenience" does not justify regulations that treat women differently from men.  *See, e.g.*, *Frontiero v. Richardson*, 411 U.S. 677, 688-89 (1993) (holding that the convenience of assuming that spouses of male service members are dependents for purposes of obtaining increased benefits, but requiring a showing that spouse of female service members are in fact dependents, does not justify the disparate treatment between men and women under the statute at issue).  These cases were decided under a higher standard than the standard the Illinois statute must meet here.

Plaintiffs further argue that the deadline imposed under the statute for the filing of the receipt is irrational because it would do no harm to either objectors or the Board to allow a

candidate, if challenged, to prove he had filed the "Statement of Economic Interests" even after the deadline had passed.  They argue this is so because objectors frequently use a "shotgun" approach where they challenge a candidate's nominating papers on every conceivable ground.   However, given the low standard that defendants must meet to justify the deadline, it is not irrational to require the receipt to be filed by the last day for which to file nominating papers.   The deadline gives objectors the opportunity to know in advance whether a candidate has complied before initiating an objection, and thereby saves objectors and the Board the time of initiating needless hearings or objections. Further, as the Supreme Court has already noted, filing deadlines are constitutionally permissible given the "cascade of exceptions" that might otherwise result.  *See United States v. Locke*, 471 U.S. 84, 101 (1985) (upholding filing deadline under rational review standard where failure to file timely mining claim resulted in extinguishment of property rights); *see also Richards v. Lavelle*, 620 F.2d 144, 148 (7th Cir. 1980) ("In the abstract, no constitutional problem is presented by the state's choice to enforce strictly the technical requirements" of a deadline in an election statute).

Likewise, it is not unconstitutional to disqualify candidates for filing the receipt late.  There would be no rational way for the state or Board to enforce the receipt-filing requirement if the

failure to file the receipt could not result in the disqualification of the candidate. Plaintiffs point to *Richards* in which the Seventh Circuit held that the state of Illinois could not enforce a maximum limitation on the number of signatures on a nominating petition with the drastic sanction of candidate disqualification since that sanction bore no rational relationship to the interest the state asserted in imposing the maximum signature limitation. *Id.* at 148. In *Richards*, the Seventh Circuit held that the state could not "serve a legitimate end through irrational means." *Id.* In that case, the state's chosen method for dealing with too many signatures, by rejecting all of them, was clearly irrational because the state could have taken many other steps to deal with the problem (such as refusing to consider any signatures over the maximum) so that its stated rationale for the disqualification (administrative convenience) did not hold up. *Id.* at 149. The court concluded that the state had many other options to avoid the administrative burden the excess signatures might create. *Id.* Here, however, the state and the Board have no other option for avoiding the administrative burden created by a failure to file the receipt; any other option they might adopt would cause the same burden because it would also require notifying candidates and allowing them to file the receipt late or would require an additional hearing or administrative step

to allow the candidate to present evidence that she had filed the "Statement of Economic Interests."

For these reasons, I find that the statute does not violate plaintiffs' First and Fourteenth Amendment rights, and is not unconstitutional.[12]

## 2. Equal Protection Challenge

Lawrence also argues that the statute violates his right to equal protection because it disqualifies him from the ballot for failing to file his receipt even though he did file his "Statement of Economic Interests" while, as interpreted by Illinois courts, the statute does not disqualify individuals who filed false statements. *See Welch v. Johnson*, 147 Ill. 2d 40, 54, 167 Ill. Dec. 989, 995, 588 N.E.2d 1119, 1125 (1992). Although the statute does affect Lawrence's right to appear as a candidate and therefore his and the other plaintiffs' right to freedom of association, this type of ballot access case does not follow traditional equal protection analysis. Rather than applying strict scrutiny simply because this affects plaintiffs' fundamental right to association, an equal protection challenge requires the same analysis as discussed above with respect to the other First and Fourteenth

---

[12]Plaintiffs also argue that the statute is unconstitutional on its face, in addition to being unconstitutional as applied to them. Normally, when making a facial challenge to a statute, a plaintiff must show that "no set of circumstances exists" under which the statute would be valid. *Ohio v. Akron Ctr. for Reproductive Health*, 497 U.S. 502, 514 (1990) (internal citations omitted). For the same reasons discussed above with respect to their "as applied" claim, plaintiffs cannot make this showing.

Amendment claims.  *See Clements v. Fashing*, 457 U.S. 957, 965-66 (1982) (explaining equal protection analysis in this context). Having determined, as discussed *supra*, that the statute at issue imposes no severe burden on plaintiffs, I need only consider whether the unequal treatment of which Lawrence complains is rational.  *See id.*

I conclude that the treatment is rational.  The Illinois supreme court concluded in *Welch* that the Illinois Election Code did not allow the disqualification of those who filed inaccurate "Statement of Economic Interests" because the wording of the statute only required the filing of a "complete" statement.  147 Ill. 2d at 53-54, 167 Ill. Dec. at 994-95, 588 N.E.2d at 1125.  It is rational to allow candidates who have filed an inaccurate statement to proceed while not allowing those who have not filed a receipt to proceed because the statute gives the Board the responsibility only to determine whether the statement and the receipt were actually filed in the proper location.  As defendants note, the Illinois code provides a criminal penalty for persons who file false or incomplete statements.  *See* 5 ILL. COMP. STAT. 420/4A-107.  It is not irrational to require candidates to file certain documents and then ensure the veracity of those documents through criminal sanctions rather than through an election-related sanction.  Therefore, I conclude the statute does not violate the equal protection clause.

### IV. Conclusion

For the reasons stated above, I deny defendants' motion to dismiss and deny plaintiffs' motion for summary judgment. I also deny defendants' motion to strike as moot. Given that no factual issues remain to be resolved in this case, I grant summary judgment in favor of defendants.[13]

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: February _27__, 2007

---

[13]Although defendants have not moved for summary judgment, summary judgment in their favor is appropriate because no factual issues are in dispute, and plaintiffs had notice of and an opportunity to contest all the legal issues in this case. *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 765 (7th Cir. 2006) (citing cases that district court may grant summary judgment *sua sponte* where losing party has notice that it needs to come forward with all of its evidence).